UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GHADA HAMMOUD,                                    Case No. 22-10813

    Plaintiff,                                    F. Kay Behm
v.                                                United States District Judge

J.J. MARSHALL & ASSOCIATES, INC.,

    Defendant.
_____ /

**OPINION AND ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT (ECF No. 39)**

## I.    PROCEDURAL HISTORY

Plaintiff, Ghada Hammoud, filed this action against J.J. Marshall &

Associates (JJMA), alleging violations of the Fair Credit Reporting Act, 15 U.S.C.

§ 1681, *et seq.* (FCRA) and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692,

*et seq*. (FDCPA).  (ECF No. 1).  JJMA filed a motion for summary judgment on

September 25, 2023.  (ECF No. 39, 40).  Hammoud filed a response on October 16,

2023.  (ECF No. 41, 42).  JJMA filed a reply on October 25, 2023.  (ECF No. 43).

The court held a hearing via videoconference on May 22, 2024.  (ECF No. 49).

For the reasons set forth below, the court **GRANTS** the motion for summary

judgment.

II.      FACTUAL BACKGROUND

Hammoud visited her primary physician, Dr. Khansa, on December 6, 2017.

(ECF No. 39-2, pp. 20:10-18; 22:7-9; ECF No. 39-3, p. 9:8-15).[1]  While there, Dr.

Khansa discussed with Hammoud that she needed a colonoscopy and introduced

Plaintiff to Dr. Siddiqui, a gastroenterologist, at Dr. Khansa's office, in person.

(ECF No. 39-2, pp. 20:10-18; 22:7-9; 30:8-11).  Dr. Siddiqui testified that in 2017, it

was her common practice to see patients at Dr. Khansa's office on Wednesday

afternoons.  (ECF No. 39-3, p. 9:8-15; ECF No. 39-4, p. 19:3-6).  Dr. Siddiqui

explained that on Wednesdays, Dr. Khansa's office would have a schedule of

patients for Dr. Siddiqui to see and she would go the exam room, meet with the

patients, and discuss any treatment or procedures.  (ECF No. 39-3, p. 9:8-15).

Before meeting with Dr. Siddiqui, Hammoud signed a form regarding Dr.

Siddiqui's services allowing Dr. Siddiqui's office, Gastrointestinal and Liver

Disorders Specialists, PLLC, to bill her.  (ECF No. 39-3, p. 13:8-9; ECF No. 39-10).

On December 6, 2017, Dr. Siddiqui discussed with Hammoud her history and the

colonoscopy procedure.  (ECF No. 39-3, p. 21:2-12).  Hammoud has a different

memory of this conversation.  According to Hammoud, Dr. Siddiqui introduced

herself, noted that Dr. Khansa had referred her for a colonoscopy, and told her

---

[1] For purposes of the motion for summary judgment, Hammoud does not dispute that this date is correct.  (ECF No. 42, ¶ 1).

that someone from her office would call Hammoud to schedule an appointment.

(ECF No. 39-2, 20:12-22:20).

Gastrointestinal and Liver Disorders Specialists billed Hammoud on April 11, 2018, a $50.00 co-pay for the visit with Dr. Siddiqui at Dr. Khansa's office and continued to bill her until October 5, 2020.  (ECF No. 39-3, at pp. 19:17-23; ECF No. 39-4).  In total, Dr. Siddiqui produced the following records concerning Hammoud:

> - Hammoud's Billing Statements (ECF No. 39-3, pp. 19:17-25; ECF No. 39-4)
>
> - Colonoscopy Operative Note from Beaumont (ECF No. 39-3; ECF No. 39-5)
>
> - Encounter form used for billing (ECF No. 39-3, p. 8:5-7; ECF No. 39-7)
>
> - Patient summary printout (ECF No. 39-3, p. 17:3-14; ECF No. 39-8)
>
> - Global Referral Request Confirmation (ECF No. 39-3, pp. 18:20-23; 19:13-24; ECF No. 39-9)
>
> - New Patient Information Sheet (ECF No. 39-3, pp. 26:25; 27:4-6; 27:18-21; ECF No. 39-10)

Hammoud points out, however, that Dr. Siddiqui failed to produce the chart notes from the December 6, 2017 encounter.  (ECF No. 39-6, p. 8:16-19)

Hammoud resided at 13124 S Morrow Circle, Dearborn, Michigan 48126 between 2013 and 2018.  (ECF No. 39-2, p. 9:1-9).  Hammoud moved to 343

Whitefield Court, Dearborn Heights, Michigan in 2018.  *Id*. at 10:6-7; 8:17-20.

Hammoud, however, claims to have never received a bill from Gastrointestinal

and Liver Disorders Specialists.  *Id*. at 17:1-5.  Dr. Siddiqui performed a

colonoscopy on Hammoud on February 27, 2018.  *Id*. at 21:9-14.

 Dennis Reneau is JJMA's compliance officer whose job it is to review any

disputes that come directly from consumers and from credit reporting agencies.

(ECF No. 39-11, pp. 10:3-5).  On October 29, 2020, JJMA was referred a debt for

collection owed by Hammoud in the amount of $50 to Gastrointestinal and Liver

Disorders Specialists PLLC.  *Id*. at 24:17-19; 56:24.15.  On November 18, 2020,

JJMA says it received a call from Hammoud stating that she disputed the debt.  *Id*.

at 28:15-16.  Hammoud says she called requesting information about the alleged

debt, including what the debt was for and who the doctor was that allegedly

provided her services.  (ECF No. 41-1).  Hammoud says that JJMA responded that

it would request the file and send it her, but JJMA never sent anything to

Hammoud in response to the call.  *Id*.

 Hammoud had three telephone calls with JJMA on November 18, 2020,

January 27, 2021, and March 5, 2021.  (ECF No. 39-16, Def's Resp. to Pl's Int., No.

1, 3; ECF No. 39-12).  In response to Hammoud's November 18, 2020 telephone

call to JJMA, her account was reported to Equifax and Trans Union on December

3, 2020 as disputed.  (ECF No. 39-16, Nos. 1, 3).  In response to Hammoud's

November 18, 2020 telephone call to JJMA, JJMA says that it contacted its client, Elite Medical Billing (Dr. Siddiqui's medical biller) and received documents verifying that Hammoud owed the debt.  (ECF No. 39-11, pp. 62:20-24, 63:7-16; ECF No. 39-15, PageID.306-307).

Hammoud sent a letter to Equifax dated March 19, 2021 disputing the debt. (ECF No. 39-14).  JJMA received an open item ledger of Hammoud's account with Dr. Siddiqui.  (ECF No. 39-11, p. 61:1-11; ECF 39-15, PageID.307-308).  Hammoud maintains that JJMA did not receive this ledger from Dr. Siddiqui's office until *after* this action was filed and JJMA was served with the summons and complaint. (ECF No. 6, Service on JJMA dated 4/20/22; ECF No. 39-15, PageID.307-308, dated 4/27/22).

On April 23, 2021, JJMA received an Automated Consumer Dispute Verification form ("ACDV") from Equifax.  (ECF No. 39-11, pp. 37:19-25; 41:11-15; ECF No. 39-13).  The ACDV also included the March 19, 2021 dispute letter, in which Hammoud explained that she saw Dr. Siddiqui at her primary care physician's office in December 2017 but she disputed that she owed a co-pay for this office visit.  (ECF No. 39-11, p. 40:7-9; ECF No. 39-14).  After receiving the notice, JJMA maintains that it reviewed the notice and documents (dispute letter) provided by Equifax, reviewed the account documents and information previously provided by the creditor, and reviewed the account information and supporting

documents for Hammoud's account.  (ECF No. 39-11, pp. 21:4-6; 39:10-13; 40:2-12; 44:20-25; 45:14-6).

On April 23, 2021, JJMA, via e-Oscar, responded to the ACDV and verified the accuracy of its reported information relating to Hammoud.  *Id*. at 40:2-12; ECF No. 39-16, No. 3.  On April 27, 2021, JJMA sent Hammoud a copy of her file.  (ECF No. 39-11, p. 29:21; ECF No. 29-16, No. 3).  JJMA says that Hammoud was never denied any credit as a result of JJMA's conduct.  (ECF No. 39-17, Nos. 8, 10).  Hammoud maintains that this characterization is incomplete given that her refinancing efforts were delayed because of the reporting of this alleged debt.  (ECF No. 39-2, p. 39:2-8).  Hammoud testified that she obtained two car leases after the debt was reported on her credit and that she did not know whether she could have gotten a better interest rate without the account on her credit report.  *Id*. at 35:16-25; 36:1-12; 40:4-6.  As to financial losses, Hammoud testified that she took time off from work to mail disputes and paid for the postage.  *Id*. at 40:1-4.  Hammoud never sought any medical, mental, therapeutic, psychological or counseling services as a result of JJMA's alleged conduct.  (ECF No. 39-17, Pl's Resp. to Def's Req. To Admit Nos. 2-8, Resp. to Int. No. 7).  According to JJMA, Hammoud's only claim is that she was frustrated that the debt was on her credit report because she believed she does not owe it.  (ECF No. 39-2, pp. 33:25; 34:1-9).

6

III.    **ANALYSIS**

A.    <u>Standard of Review</u>

When a party files a motion for summary judgment, it must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . .; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).  The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)).  Furthermore, the evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Where the movant establishes the lack of a genuine issue of material fact, the burden of demonstrating the existence of such an issue then shifts to the non-

moving party to come forward with "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). That is, the party opposing a motion for summary judgment must make an affirmative showing with proper evidence and to do so must "designate specific facts in affidavits, depositions, or other factual material showing 'evidence on which the jury could reasonably find for the plaintiff.'" *Brown v. Scott*, 329 F. Supp. 2d 905, 910 (6th Cir. 2004). In order to fulfill this burden, the non-moving party only needs to demonstrate the minimal standard that a jury could ostensibly find in his favor. *Anderson*, 477 U.S. at 248; *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, mere allegations or denials in the non-movant's pleadings will not satisfy this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 251.

The court's role is limited to determining whether there is a genuine dispute about a material fact, that is, if the evidence in the case "is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Such a determination requires that the court "view the evidence presented through the prism of the substantive evidentiary burden" applicable to the case. *Id*. at 254. Thus, if the plaintiff must ultimately prove its case at trial by a preponderance of the evidence, on a motion for summary judgment the court must determine whether a jury could reasonably find that the plaintiff's factual

contentions are true by a preponderance of the evidence.  *See id.* at 252–53.

Finally, if the nonmoving party fails to make a sufficient showing on an essential

element of its case for which it carries the burden of proof, the movant is entitled

to summary judgment.  *Celotex*, 477 U.S. at 323.  The court must construe Rule 56

with due regard not only for the rights of those "asserting claims and defenses

that are adequately based in fact to have those claims and defenses tried to a

jury," but also for the rights of those "opposing such claims and defenses to

demonstrate in the manner provided by the Rule, prior to trial, that the claims

and defenses have no factual basis."  *Id*. at 327.

B.   The FCRA

"Congress enacted the FCRA in 1970 to ensure fair and accurate credit

reporting, promote efficiency in the banking system, and protect consumer

privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007).  15 U.S.C. § 1681s-

2 outlines various responsibilities of "furnishers of information to consumer

reporting agencies."  This section was "designed to prevent 'furnishers of

information' from spreading inaccurate consumer-credit information*." Boggio v.

USAA Fed. Sav. Bank*, 696 F.3d 611, 614 (6th Cir. 2012).  The FCRA imposes a duty

on furnishers of information to provide complete and accurate information.

*Pittman v. Experian Information Solutions*, 901 F.3d 619, 628 (6th Cir. 2018) (citing

15 U.S.C. § 1681s-2(a)).  The FCRA also imposes certain duties on furnishers of

information upon notice of a dispute.  *Id.* (citing 15 U.S.C. § 1681s-2(b)).  After

receiving notice of a "dispute with regard to the completeness or accuracy of any

information provided by a person to a consumer reporting agency," that person

shall:

> (A) conduct an investigation with respect to the disputed information;
>
> (B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;
>
> (C) report the results of the investigation to the consumer reporting agency;
>
> (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and
>
> (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly—
>
> > (i) modify that item of information;
> >
> > (ii) delete that item of information; or
> >
> > (iii) permanently block the reporting of that item of information.

15 U.S.C. § 1681s-2(b)(1).

The FCRA "expressly creates a private right of action to enforce many of its terms." *Boggio*, 696 F.3d at 615.  Indeed, the "FCRA expressly creates a private right of action against a furnisher who fails to satisfy one of five duties identified in § 1681s-2(b)." *Id*. at 618.  A consumer is permitted to demonstrate that a furnisher negligently breached one of these duties, under § 1681o, or willfully breached one of them, under § 1681n.  *Id*.  Under § 1681s-2(b)(1), JJMA was required, "after receiving notice of a consumer dispute from a credit reporting agency, to conduct a reasonable investigation of their records to determine whether the disputed information can be verified."  *Pittman*, 901 F.3d at 629 (quoting *Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 431 (4th Cir. 2004)).

C.   <u>The Allegedly Inaccurate Information is Not Objectively and Readily Verifiable and Thus Cannot Form the Basis of an FCRA Claim</u>

JJMA raises a host of reasons that purportedly defeat Hammoud's FCRA claim.  One reason appears dispositive: that the allegedly inaccurate information is not objectively and readily verifiable because it stems from an unresolved dispute over whether Dr. Siddiqui properly charged Hammoud for an office visit.  As JJMA explains in its brief, some circuits characterize the issue as drawing a line between factual inaccuracies and disputed legal questions.  For example, some courts hold that to prevail, "[a] plaintiff's required showing is factual inaccuracy, rather than the existence of disputed legal questions.  Furnishers are neither

qualified nor obligated to resolve matters that turn on questions that can only be resolved by a court of law." *Chiang v. Verizon New Eng., Inc.*, 595 F.3d 26, 38 (1st Cir. 2010); *see also Hunt v. JPMorgan Chase Bank, Nat'l Ass'n*, 770 F. App'x 452, 458 (11th Cir. 2019).

More recently, Courts of Appeal have rejected the "legal dispute" versus "factual inaccuracy" dichotomy. The Eleventh Circuit rejected this approach and adopted the approach of the Second Circuit, which focuses on whether the challenged information is "objectively and readily verifiable." *Holden v. Holiday Inn Club Vacations, Inc*., 98 F.4th 1359, 1368 (11th Cir. 2024) (citing *Sessa v. Trans Union, LLC*, 74 F.4th 38, 40 (2d Cir. 2023) ("[A]n FCRA claim alleges an 'inaccuracy' so long as the challenged information is objectively and readily verifiable.")). The court acknowledged that furnishers of credit information are in a better position to make a thorough investigation of a disputed debt than a consumer reporting agency, *see Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1156 (9th Cir. 2009), and are sometimes required to "investigate, and even to highlight or resolve, questions of legal significance." *Holden*, 98 F.4th at 1368 (quoting *Gross v. CitiMortgage, Inc.*, 33 F.4th 1246, 1253 (9th Cir. 2022)). Indeed, furnishers are "required by the FCRA to accurately report information derived from the readily verifiable and straightforward application of law to facts." *Mader*, 56 F.4th at 270. If a legal question is sufficiently settled so that the import of a debt is readily

and objectively verifiable, the FCRA requires the implications of that decision to be reflected in credit reports.  *Id.* at 271.  In *Losch v. Nationstar Mortgage LLC*, 995 F.3d 937, 944-46 (11th Cir. 2021), the court held, therefore, that the misreporting of a bankruptcy discharge order on certain types of debt was a cognizable inaccuracy under the FCRA.  *Id*.  However, in *Holden*, the court concluded that resolution of the contract dispute was not a straightforward application of law to facts because Florida state courts that have reviewed timeshare agreements—like the ones at issue in *Holden*—have come to conflicting conclusions about whether the default provisions excused a consumer's obligation to keep paying.  98 F.4th at 1368.  But in *Sessa*, the Second Circuit considered whether a vehicle lease contained a balloon payment, and therefore whether the plaintiff was required to pay a debt, concluding that the lack of a balloon payment was verifiable by examining the language of the lease and thus, the FCRA claim was cognizable.  *Sessa*, 74 F.4th at 43, n.7 ("The statement on Sessa's credit report that she owed a balloon payment was ... factually inaccurate.").

Hammoud argues here that a simple request for medical records from Dr. Siddiqui's office would have shown that she had no records pertaining to any December 6, 2017 office visit with Hammoud and only had records pertaining to

the February 2018 colonoscopy.[2]  Accordingly, Hammoud maintains that it was

readily verifiable that she was not responsible for the $50 copay because she

cannot be responsible for a copay for a medical visit that did not occur.  However,

Hammoud admits that she saw Dr. Siddiqui on December 6, 2017 during her visit

with Dr. Khansa.  (ECF No. 39-14).  What she disputes is whether that visit was a

properly billable office visit.  *Id*.  Hammoud and Dr. Siddiqui offer differing

recollections of this encounter: Dr. Siddiqui says she discussed with Hammoud her

history and the colonoscopy procedure.  (ECF No. 39-3, p. 21:2-12).  While,

according to Hammoud, Dr. Siddiqui merely introduced herself, noted that Dr.

Khansa had referred her for a colonoscopy, and told her that someone from her

office would call Hammoud to schedule an appointment.  (ECF No. 39-2, 20:12-

22:20).  Regardless of the parties' differing recollections, Hammoud asks too

---

[2] It is not clear that even if JJMA had contacted Dr. Siddiqui's office, it could have legally obtained the medical information Hammoud claims it should have obtained to conduct a reasonable investigation.  HIPAA (the Health Insurance Portability and Accountability Act of 1996) criminalizes the wrongful use, acquisition, or disclosure of "individually identifiable health information." 42 U.S.C. § 1320d-6.  Hammoud does not explain how Dr. Siddiqui could have provided the medical details of Hammoud's office visit to JJMA or how JJMA could have acquired such information without running afoul of HIPAA.  Hammoud's claim rests on her contention that JJMA would have discovered that she did not have a billable office visit with Dr. Siddiqui if it had contacted Dr. Siddiqui's office for her medical records.  But HIPAA precluded JJMA from obtaining such "individually identifiable health information" from Dr. Siddiqui. Accordingly, Hammoud cannot show that if JJMA had conducted a reasonable investigation in manner she suggests that the "furnisher would have discovered that the information reported was inaccurate or incomplete, triggering the furnisher's obligation to correct that information. Absent that showing, a plaintiff's claim against a furnisher necessarily fails." *Felts v. Wells Fargo Bank, N.A.*, 893 F.3d 1305 (11th Cir. 2018).

much of JJMA.  The FCRA does not require JJMA to resolve the legal dispute

between Hammoud and Dr. Siddiqui as to whether their December 6, 2017

encounter constitutes a properly billable office visit between a doctor and

patient.  Generally, the validity of a debt is a legal dispute, resolvable only in a

court of law.  *See DeAndre v. Trans Union LLC*, 523 F.3d 61, 68 (1st Cir. 2008);

*Saunders v. Branch Banking and Trust Co. of VA*, 526 F.3d 142, 150 (4th Cir. 2008);

*Carvalho v. Equifax Information Servs., LLC*, 629 F.3d 876, 891 (9th Cir. 2010).

Unlike *Mader*, this does not involve a "straightforward application of law to

facts."  56 F.4th at 270.  It is the role of a court, not JJMA, to determine whether

Dr. Siddiqui properly billed Hammoud for an office visit, thus obligating her to pay

a co-pay.  *See e.g.*, *Hossain v. Portfolio Recovery Assocs., LLC*, --- F.Supp.3d ----,

2023 WL 6155974, at *4 (E.D.N.Y. Sept. 21, 2023) ("Plaintiff's claim is not

cognizable under the FCRA because the question of whether the statute of

limitations has elapsed is an unresolved legal question requiring legal reasoning

based on factual analysis and, consequently, is 'not objectively and readily

verifiable.'"); *Reyes v. Equifax Info. Servs.*, *LLC*, 2023 WL 7272368, at *6 (E.D. Tex.

Sept. 14, 2023), report and recommendation adopted, 2024 WL 1308000 (E.D.

Tex. Mar. 27, 2024) (Where the plaintiff conceded that she did not pay the

amounts due to Citibank because she believed that the charges were fraudulent

and where Citibank considered the charges a valid portion of the account balance,

there was a "live legal dispute" between the parties over whether the plaintiff

was responsible for the outstanding balance.  Accordingly, the court found that

balance was not "objectively and readily verifiable.").  Thus, the court finds that

the validity of Hammoud's debt was not "objectively and readily verifiable" and

her FCRA claims must fail for this reason.

    D.    <u>FDCPA</u>

Hammoud alleges in her complaint that JJMA, in its attempts to collect the

debt from Hammoud, violated the FDCPA by engaging in harassing and abusive

conduct (§ 1692d); by misrepresenting the character, amount, or legal status of

any debt (§ 1692e(2)(A)); communicating false information including that a

disputed debt is disputed (§ 1692e(8)); using unfair and conscionable means for

collecting a debt (§ 1692f); and attempting to collect an amount unless expressly

authorized by the agreement creating the debit or permitted by law (§ 1692f(1)).

(ECF No. 1, Count III).  JJMS moves for summary judgment on all these claims.

In its motion for summary judgment, JJMA first argues that the complaint is

devoid of any factual detail and assumes that her FDCPA claim under § 1692d is

based on the allegation that JJMA "continues to furnish inaccurate data" to

Equifax.  *Id*. at PageID.7.  Section 1692d provides as follows:

> A debt collector may not engage in any conduct the
> natural consequence of which is to harass, oppress, or
> abuse any person in connection with the collection of a

debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(1) The use or threat of use of violence or other criminal means to harm the physical person, reputation, or property of any person.

(2) The use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader.

(3) The publication of a list of consumers who allegedly refuse to pay debts, except to a consumer reporting agency or to persons meeting the requirements of section 1681a(f) or 1681b(3) of this title.

(4) The advertisement for sale of any debt to coerce payment of the debt.

(5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.

(6) Except as provided in section 1692b of this title, the placement of telephone calls without meaningful disclosure of the caller's identity.

15 U.S.C.A. § 1692d.  Hammoud argues that she simply needs to prove to a jury

that JJMS reported an un-owed debt and refused to remove the same upon her

dispute and the jury will determine whether this conduct was harassing,

oppressive, or abusive.

As set forth above, whether the debt is owed is an unresolved dispute between Hammoud and Dr. Siddiqui.  And the record shows that JJMS reported the debt as disputed to Equifax and TransUnion.  (ECF No. 39-13; ECF No. 39-16, No. 3).  While the list above found in § 1692d is not exclusive, Hammoud has not offered any authority suggesting that JJMS's actions violated § 1692d of the FDCPA.  Nor has Hammoud met her burden on summary judgment to come forward with specific facts, supported by the evidence in the record, on which a reasonable jury could find a genuine fact issue for trial.  *Anderson*, 477 U.S. at 248.  Accordingly, the court grants summary judgment in favor of JJMA on this claim.

JJMS next argues that Hammoud's claims under § 1692e fail.  Section 1692e(2)(A) prohibits "the false representation of . . . the character, amount, or legal status of any debt; or . . . any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt."  Section 1692e(8) prohibits a debt collector's "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed."  Hammoud maintains that because JJMA's reporting was inaccurate, these claims must survive because they present factual disputes for the jury to decide.  An erroneous failure to flag a reported debt as disputed would also be a

material violation of a creditor's obligation to provide accurate information under the FDCPA, specifically § 1692e(8). *Ader v. Merchants & Med. Credit Corp., Inc*., 2018 WL 632044, at *2 (E.D. Mich. Jan. 9, 2018), report and recommendation adopted, 2018 WL 623650 (E.D. Mich. Jan. 30, 2018). As to § 1692e(8), the record shows that JJMA reported the debt as disputed to Equifax and TransUnion. (ECF No. 39-13; ECF No. 39-16, No. 3). It is not clear from the complaint or Hammoud's response what other communications by JJMA fall within the scope of her § 1692e(8) claim and it is not the court's obligation to comb the record in support of Hammoud's claim. Similarly, Hammoud has not explained how any of JJMA's communications fall within the scope of § 1692e(2)(A) and the court will not make Hammoud's case for her. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to … put flesh on its bones) (citing *Citizens Awareness Network, Inc. v. United States Nuclear Regulation Comm'n*, 59 F.3d 284, 293-94 (1st Cir. 1995)); *see also Emerson v. Novartis Pharm Corp*., 446 F. App'x 733, 736 (6th Cir. 2011) (quoting *United States v. Dunkel*, 927 F.2d 955, 956) (7th Cir. 1991) ("'Judges are not like pigs, hunting for truffles' that might be buried in the record.")). Further, Hammoud has not met her burden on summary judgment to come forward with specific facts, supported by the evidence in the record, on which a reasonable jury could find a genuine fact issue for trial.

*Anderson*, 477 U.S. at 248.  Thus, the court grants JJMA summary judgment on this claim.

Lastly, Hammoud alleges that JJMA violated 15 U.S.C. § 1692f and f(1) of the FDCPA, which preclude a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt."  According to JJMA, at a minimum, to state a claim for violation of § 1692f, Hammoud must identify conduct that is beyond the other specific provisions of the FDCPA.  *Taylor v. Heath W. Williams, L.L.C.*, 510 F. Supp. 2d 1206, 1217 (N.D. Ga. 2007); *Saltzman v. I.C. System, Inc.*, 2009 WL 3190359 at *8, 9 (E.D. Mich., Sept. 30, 2009).  Here, according to JJMA, Hammoud has not alleged any additional or distinct facts to support her § 1692f claims, separate from the facts alleging JJMA violated more specific FDCPA provisions.  In other words, she fails to specify what, if any, conduct by JJMA qualifies as "unfair and unconscionable" beyond the other alleged violations and thus, the § 1692f claims must be dismissed.  In response, Hammoud argues that she is not precluded from asserting a claim under § 1692f in addition to § 1692e, citing *Virden v. Client Servs*., 2019 U.S. Dist. LEXIS 171129, at *15 (N.D. Ohio Oct. 2, 2019), which held that the Sixth Circuit concluded the opposite of JJMA's argument: "A debt collector's action could be 'misleading' under § 1692e, 'unfair' under § 1692f, or, as alleged here, both."  *Id*. (quoting *Currier v. First Resolution Inv. Corp*., 762 F.3d 529, 536 (6th Cir. 2014)).

Even if Hammoud is correct on the law, she again has not met her burden on summary judgment to come forward with specific facts, supported by the evidence in the record, upon which a reasonable jury could find a genuine fact issue for trial.  *Anderson*, 477 U.S. at 248.  Instead, she has left the court to guess as to the factual basis of her FDCPA claims.  This is not sufficient and summary judgment in favor of JJMA is warranted on these claims.

## IV.   CONCLUSION

For the reasons set forth above, the court **GRANTS** Defendant's motion for summary judgment and **DISMISSES** Plaintiff's complaint.

**SO ORDERED**.

Date: June 6, 2024                         s/F. Kay Behm
                                           F. Kay Behm
                                           United States District Judge